IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRI-STATE GENERATION AND TRANSMISSION
ASSOCIATION, INC., a Colorado Nonprofit Cooperative Corporation,

    Plaintiff,

vs.                                                      Civ. No. 13-00085 KG/LAM

NEW MEXICO PUBLIC REGULATION COMMISSION,
a New Mexico Agency, and its members, Commissioners
Patrick H. Lyons, Theresa Becenti-Aguilar, Ben L. Hall, Valerie Espinoza, and Karen L.
Montoya, acting in their official capacities,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Cooperative Consumer Coalition's Motion to Intervene (Motion to Intervene), filed April 4, 2013. (Doc. 23). Plaintiff Tri-State Generation and Transmission Association, Inc. (Tri-State) filed a response on April 19, 2013, and Cooperative Consumer Coalition (CCC) filed its reply on May 6, 2013. (Docs. 25 and 27). Defendants do not oppose the Motion to Intervene. (Doc. 23) at 1. Having reviewed the Motion to Intervene and the accompanying briefs, the Court denies the Motion to Intervene.

A. *Background*

Tri-State brings this 42 U.S.C. § 1983 action for declaratory judgment and injunctive relief to challenge Defendants' asserted jurisdiction over Tri-State's wholesale electricity rates. Tri-State contends that Defendants' actions impermissibly regulate interstate commerce in violation of the Commerce Clause of the United States Constitution.

*1. Factual Allegations*

Tri-State is a Colorado non-profit regional generation and transmission cooperative corporation which provides wholesale electric power to forty-four Member Systems in four states, including New Mexico. (Doc. 63) at ¶ 2. New Mexico has twelve Member Systems. *Id.* at ¶ 12. Tri-State has entered into All Requirements Contracts with the Member Systems in which the Member Systems agree to "purchase and receive from Tri-State (with nominal exceptions not relevant here) all the electric power and energy the Member System requires to operate its electric system." *Id.* at ¶ 34. The Member Systems sell the electricity provided by Tri-State, at retail, to the people or businesses within each Member System. *Id.* at ¶ 11. The forty-four Member Systems provide retail electricity to more than 1.5 million people. *Id.* at ¶ 2.

A forty-four member democratically elected Board of Directors governs Tri-State's wholesale rates and other business. *Id.* at ¶ 12. The Board of Directors consists of one director elected by each Member System. *Id.* The wholesale rates adopted by the Board of Directors are single, i.e., "postage stamp," rates which means that "regardless of the size, location, and structure of a Member System, each Member System is charged the same wholesale rate for the capacity and energy delivered to its system." *Id.* at ¶ 39.

In 2012, Tri-State's Board of Directors voted on and approved a 4.9% rate increase using a new rate design for calendar year 2013. *Id.* at ¶ 40. Tri-State later filed Advice Notice No. 15 with Defendant New Mexico Public Regulation Commission (PRC) to inform the PRC of the wholesale rate increase for 2013. *Id.* at ¶ 42. Three New Mexico Member Systems filed protests with the PRC objecting to the 2013 wholesale rate increase. *Id.* at ¶ 49. On November 29, 2012, Tri-State filed a response to the protests based, in part, on the PRC's alleged lack of jurisdiction.

*Id.* at ¶¶ 50-51.  On December 20, 2012, the PRC rejected Tri-State's response and suspended the 2013 rate increase.  *Id.* at ¶ 52.

Tri-State then filed this lawsuit on January 25, 2013.  (Doc. 1).  Tri-State also filed with the PRC three Advice Notices for an interim wholesale rate pending resolution of its federal case, the filing of another rate Advice Notice, or an order by the PRC.  (Doc. 63) at ¶ 53.  The same three protesting Member Systems filed protests with the PRC objecting to the interim rate. *Id.* at ¶ 56.  On March 13, 2013, the PRC opened a separate case concerning the interim rate and denied Tri-State's request for an interim rate.  *Id.*

Tri-State and a non-protesting New Mexico Member System subsequently filed motions to reconsider the denial of the interim rate.  On May 8, 2013, the PRC denied the motions to reconsider.  *Id*.  Tri-State then appealed the PRC orders denying the interim rate to the New Mexico Supreme Court.  *Id.* at ¶ 57.  That appeal is apparently still pending.  *Id.*  Because the PRC was not likely to approve the 2013 wholesale rate before Tri-State's Board of Directors established the wholesale rate for 2014, Tri-State withdrew Advice Notice No. 15 on June 26, 2013.  *Id.* at ¶ 58.

In September of 2013, Tri-State's Board of Directors voted on and approved a 2014 wholesale rate.  *Id.* at ¶ 60.  Tri-State then filed with the PRC Advice Notice No. 19 informing the PRC of the 2014 rate.  *Id.* at ¶ 61.  On October 23, 2013, the PRC consolidated the PRC cases on the 2013 and 2014 wholesale rates.  *Id.* at ¶ 63. The previous protesting Member Systems plus a fourth New Mexico Member System filed protests with the PRC regarding Advice Notice No. 19.  *Id*. at ¶ 61. Tri-State responded to the protests on November 4, 2013, again raising the issue of the PRC's jurisdiction.  *Id.* at ¶ 62.  The PRC subsequently rejected the response and suspended the 2014 rate in December 2013.  *Id.* at ¶ 64.  In response to those PRC

decisions, Tri-State filed a motion to reconsider the suspension of the 2014 rate. *Id.* The PRC, however, denied the motion to reconsider and reinstated its suspension of the 2014 rate on January 29, 2014. *Id.* On February 14, 2014, Tri-State filed, in this case, a Verified Amended Complaint for Declaratory and Injunctive Relief (Amended Complaint) which added the factual allegations regarding the PRC's rejection of the 2014 wholesale rate. (Doc. 63).

    *2. Tri-State's Amended Complaint*

Tri-State claims it is entitled to declaratory and injunctive relief under Section 1983 because Defendants' actions violate the Commerce Clause by (1) placing a burden on interstate commerce and extraterritorial regulation, and (2) discriminating against out-of-state electricity producers. *Id*. at ¶¶ 65-72. Tri-State requests that the Court enter an order declaring that:

> (a) the Commission lacks jurisdiction over Tri-State's rates and interstate wholesale contracts in New Mexico and any attempt by the Commission to exercise jurisdiction over, suspend and/or determine Tri-State's rates is unconstitutional under the United States Constitution; (b) the Commission's order suspending Tri-State's 2013 and 2014 wholesale rates and setting a rate hearing is unconstitutional under the United States Constitution; (c) the Commission may not take any action with respect to Tri-State's rates or contracts.

*Id*. at ¶ 78. Tri-State also seeks a permanent injunction which prohibits Defendants "from (a) asserting jurisdiction over Tri-State's rates, and (b) interfering with Tri-State's interstate wholesale contracts, and (c) suspending and/or determining Tri-State's wholesale rates." *Id.* at ¶ 88. Defendants' answer to the Amended Complaint is the same as their answer to the original complaint. (Docs. 22 and 64).

B. CCC's Motion to Intervene[1]

---

[1] Although CCC filed its Motion to Intervene prior to Tri-State filing its Amended Complaint, the Motion to Intervene is equally pertinent to the Amended Complaint and Defendants' corresponding answer.

CCC membership includes two large industrial businesses which are retail consumers of New Mexico Tri-State Member Systems. (Doc. 23) at 2. On March 5, 2013, the PRC hearing examiner allowed CCC to intervene in the PRC proceedings at issue. (Doc. 23-3). There are a total of nineteen intervenors in the PRC proceedings. (Doc. 39-1) at 1. CCC now moves to intervene in this lawsuit as a matter of right under Fed. R. Civ. P. 24(a)(2), or, in the alternative, CCC moves for permissive intervention under Rule 24(b). Tri-State opposes the Motion to Intervene.

C. Discussion

    *1. Intervention as a Matter of Right*

Rule 24(a)(2) states that upon a timely motion the Court must allow anyone to intervene if that person or entity

> claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Here, Tri-State does not contest that CCC's Motion to Intervene is timely for both its request for intervention as a matter of right and its request, in the alternative, for permissive intervention.

The prospective intervenor has the burden of establishing the right to intervene. *See, e.g., S2 Automation LLC v. Micron Technology, Inc.*, 2012 WL 3656462 *11 (D.N.M.). In determining if the prospective intervenor has carried that burden, the Court keeps in mind that the Tenth Circuit "follows a somewhat liberal line in allowing intervention." *WildEarth Guardians v. United States Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009) (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (internal quotation marks omitted)). Because the chief concern in a motion to intervene is the practical effect of the action on the prospective intervenor, the Court is required to examine the specific facts and

5

circumstances of the action.  *Id.*  That being the case, "a Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions."  *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

The Rule 24(a)(2) requirement of an interest related to the subject of the action calls for considering whether an interest is "direct, substantial, and legally protectable.'"  *Utah Ass'n of Counties*, 255 F.3d at 1251 (internal quotation marks omitted) (quoting *In re Kaiser Steel Corp.*, 998 F.2d 783, 791 (10th Cir. 1993)).  The test for determining that requisite interest, however, "'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'"  *Id*. at 1251-52 (quoting *In re Kaiser Steel Corp.*, 998 F.2d at 841 (citations omitted)).  In fact, "[t]he threshold for finding the requisite legally protectable interest is not high."  *American Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008).  Nevertheless, a prospective intervenor must have a particularized interest which falls within the issues raised in the action, such as a threat of economic harm.  *Id.*; *WildEarth Guardians*, 573 F.3d at 996.

CCC argues that it has a requisite interest in this action based on (1) its participation in the PRC proceeding as an intervenor, and (2) its economic interest in participating in the PRC administrative process that considers and decides Tri-State's wholesale rates which, in turn, affect CCC members' retail rates.  As one district court has noted, "courts have come to differing conclusions regarding the sufficiency of a movant's claimed interest when it stems from participation in regulatory, administrative, or legislative proceedings related in some manner to the subject of the suit."  *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 2011 WL 2173785 *2 (D.Vt.) (citing *Patch,* 136 F.3d at 197 (declining to find participation in administrative proceeding was sufficient to create interest in litigation regarding that proceeding); *In re Sierra*

*Club,* 945 F.2d 776, 779 (4th Cir.1991) (holding environmental group involved in administrative permitting proceedings had interest in lawsuit challenging regulation where environmental group did not seek to intervene as a lobbyist or have a speculative future interest)).  Given this uncertainty, the Court will assume for the sake of argument that CCC has a requisite interest which resolution of this lawsuit may impair.  The Court will, therefore, proceed directly to the issue of whether CCC has established that the PRC will not adequately represent CCC's interest in the lawsuit.  *See, e.g., Kane County,Utah v. United States*, 597 F.3d 1129, 1133 (10th Cir. 2010) (proceeding directly to the inadequate representation inquiry under Rule 24(a)(2)).

The prospective intervenor's burden to satisfy the inadequate representation element under Rule 24(a)(2) is, likewise, minimal and requires only '"the *possibility* of inadequate representation.'" *WildEarth Guardians*, 573 F.3d at 996 (quoting *Utah Ass'n of Counties*, 255 F.3d at 1254 (emphasis added)).  Adequate representation, however, "does not mean exactly the same representation." *Herrera*, 257 F.R.D. at 255-56 (citing *Sanguine Ltd. v. United States Dept. of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984)).  With respect to government representation of interests, the Tenth Circuit has clearly held that it is generally "impossible for a government agency to protect both the public's interests and the would-be intervenor's private interests." *New Mexico Off-Highway Vehicle Alliance v. United States Forest Service*, 540 Fed. Appx. 877, 880 (10th Cir. 2013).  Nonetheless, if the government's interests are identical to the prospective intervenor's interest and there is no indication that the government's position or policy could shift, then the prospective intervenor has failed to meet the inadequate representation element.  *See id.* at 881 n. 7.  On the other hand, representation by the government may be inadequate if, for example, the prospective intervenor has special expertise not available to the government.  *Utahns for Better Transportation v. United States Dept. of Transportation*,

295 F.3d 1111, 1117 (10th Cir. 2002). Additionally, the government's silence on its intent to defend a prospective intervenor's particular interest is a factor in deciding whether representation is inadequate. *Id*.

CCC argues that "[t]he PRC wants to protect the general public, including the member cooperatives and the retail consumers, both residential and industrial" while CCC "wants to pursue its economic interests as a coalition of large industrial consumers in lower electric rates through participation in administrative proceedings before the PRC." (Doc. 27) at 10. Of course, in protecting the general public, the PRC also has an interest in protecting coalitions of large industrial consumers like CCC members. In defending this lawsuit, the PRC specifically seeks to retain jurisdiction over Tri-State in order to meet its statutory obligation to ensure that Tri-State, as a seller of electricity in New Mexico, sets reasonable wholesale rates. *See* NMSA 1978, § 62-6-4(B) (2003) (PRC to regulate sale of electricity to utilities to the extent necessary to determine reasonableness of cost to the utility). The PRC protest process aids the PRC in meeting that obligation. *See* NMSA 1978, § 62-6-4(D) (describing protest process). CCC's intervention in the PRC protest proceedings and its filing of the Motion to Intervene demonstrates that CCC also wants the PRC to meet its statutory obligation by ensuring that Tri-State sets reasonable wholesale rates. A reasonable wholesale rate presumably will result in a reasonable retail rate for CCC members as retail consumers. This economic interest is identical to the PRC's goal of ensuring reasonable rates to the general public.

The Court further notes that, except for a general failure to state a claim defense, CCC's proposed answer reflects the same affirmative defenses raised by PRC in its answer to the Amended Complaint. (Doc. 23-1) at 9; (Doc. 64) at 9. CCC argues, however, that it would also assert that the PRC has jurisdiction over Tri-State because it voluntarily submitted to the PRC's

jurisdiction in another PRC administrative proceeding.  CCC does not persuade the Court that there would be some reason that the PRC would not raise this same argument in this case.  *See Kane*, 597 F.3d at 1135 ("government 'ha[s] displayed no reluctance [in these proceedings], at least so far as the record before us shows'" to represent the prospective intervenor's interest, and prospective intervenor "'has provided no basis to predict that the [government] will fail to present … an argument on the merits that [the prospective intervenor] would make.'") (citation omitted).  In fact, the PRC states in its answer to the Amended Complaint that it "reserves the right to add any additional affirmative defenses that may arise over the course of this litigation." (Doc. 64) at 9.  As this Court has previously recognized, "[c]ompetent counsel, such as those representing the potential intervenors, can usually think up something the [sic] would do different from another attorney."  *Herrera*, 257 F.R.D. at 256.  A difference in trial strategy between the PRC and CCC, therefore, does not necessarily mean that the PRC's representation would be inadequate.  Finally, despite the PRC's silence on this Motion to Intervene, CCC has not shown that it has some special expertise on the subject of the PRC's jurisdiction which the PRC itself does not possess or that the PRC could possibly shift any of its policies or interests in a way that would be adverse to CCC's interest in this case.

In sum, CCC has not carried its minimal burden of showing that the PRC would not adequately represent CCC's interest in this lawsuit.  Consequently, CCC is not entitled to intervene as a matter of right under Rule 24(a)(2).

    *2. Permissive Intervention*

Under Rule 24(b), the Court can allow permissive intervention if the prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Rule 24(b) also states that "[i]n exercising its discretion, the court must consider whether

the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Unlike Rule 24(a)(2), Rule 24(b) does not require that a prospective intervenor "have a direct personal or pecuniary interest in the subject of the litigation." *San Juan County, Utah v. United States*, 503 F.3d 1163, 1207 (10th Cir. 2007). The Court may take into consideration the fact that a prospective intervenor does not "assert a separate or additional claim or defense." *Kane*, 597 F.3d at 1136. Moreover, "[w]hile not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention." *Herrera*, 257 F.R.D. at 249 (citing *City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)). The main consideration in determining whether a court will allow permissive intervention is trial convenience. *S2 Automation LLC*, 2012 WL 3656462 at *12.

It is clear from the above discussion that CCC's affirmative defenses have questions of law or fact in common with the PRC's affirmative defenses. In fact, CCC's affirmative defenses are the same as the PRC's affirmative defenses except for a general failure to state a claim defense and a defense premised on Tri-State's prior submission to PRC jurisdiction. Considering the PRC's open-ended answer to the Amended Complaint, it is possible that the PRC will raise those additional defenses. Moreover, the Court has concluded, *supra*, that the PRC will adequately represent CCC's interest.

Although undue delay is unlikely because of the early stage of this litigation, the Court has concerns regarding trial convenience and manageability. Tri-State argues that "if the Court allows CCC to intervene, it would be signaling that 1.5 million retail customers of Tri-State's member cooperatives would have a similar entitlement." (Doc. 25 at 22). *See, e.g., Herrera*, 257 F.R.D. at 259-60 (denying permissive intervention, in part, because, to be fair, the Court

"may need to let others similarly situated" to intervene and "[a]t some point, the Court must cut off the evidence to make the best decision it can."). CCC argues, on the other hand, that only the other PRC intervenors, eighteen in number, [2] might seek to intervene in this lawsuit just as CCC has sought to intervene.[3] Assuming the Court allows only the eighteen PRC intervenors to intervene in this case, those eighteen intervenors alone will undoubtedly increase the demands of case management. *See Lowery v. City of Albuquerque*, 2012 WL 394392 *27 (D.N.M.) (allowing ten prospective intervenors to intervene is "a significant number and would make managing this case difficult, and if more class members choose to pursue this course of action, the case could become unmanageable.").

On the whole, CCC has not shown that permissive intervention would contribute to the just resolution of this lawsuit. Furthermore, CCC has not convinced the Court that allowing it to intervene would not prejudice Tri-State by adversely affecting the efficient litigation of this lawsuit. The Court will, therefore, deny CCC's request for permissive intervention as well.

IT IS ORDERED that Cooperative Consumer Coalition's Motion to Intervene (Doc. 23) is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[2] Contrary to CCC's unsupported assertion that there are nineteen other PRC intervenors, there is evidence that there are a total of nineteen PRC intervenors. *See* (Doc. 39-1) at 1 (Affidavit of Barbara C. Lucero).

[3] In fact, two other PRC intervenors have filed motions to intervene. (Doc. 31); (Doc. 71).