IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRI-STATE GENERATION AND TRANSMISSION
ASSOCIATION, INC., a Colorado Nonprofit Cooperative Corporation,

    Plaintiff,

vs.                                                          Civ. No. 13-00085 KG/LAM

NEW MEXICO PUBLIC REGULATION COMMISSION,
a New Mexico Agency, and its members, Commissioners
Patrick H. Lyons, Theresa Becenti-Aguilar, Ben L. Hall, Valerie Espinoza, and Karen L.
Montoya, acting in their official capacities,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Kit Carson Electric Cooperative, Inc.'s Motion to Intervene (Motion to Intervene), filed May 28, 2013. (Doc. 33). Plaintiff Tri-State Generation and Transmission Association, Inc. (Tri-State) filed a response on June 14, 2013, and Kit Carson Electric Cooperative, Inc. (Kit Carson) filed its reply on June 27, 2013. (Docs. 40 and 41). Defendants do not oppose the Motion to Intervene. (Doc. 33) at 2. Having reviewed the Motion to Intervene and the accompanying briefs, the Court denies the Motion to Intervene.

A. *Background*

Tri-State brings this 42 U.S.C. § 1983 action for declaratory judgment and injunctive relief to challenge Defendants' asserted jurisdiction over Tri-State's wholesale electricity rates. Tri-State contends that Defendants' actions impermissibly regulate interstate commerce in violation of the Commerce Clause of the United States Constitution.

1

*1. Historical Setting*

In 1999, Tri-State, a Colorado not-for-profit regional generation and transmission cooperative corporation which provides wholesale electric power, and Plains Electric Generation and Transmission Cooperative, Inc. (Plains) applied to Defendant New Mexico Public Regulation Commission (PRC) to allow Plains to merge with Tri-State. (Doc. 34-2) at 4. Kit Carson, a New Mexico rural electric cooperative, was a Plains member at that time. (Doc. 34-4) at 26. Tri-State, Plains, and others entered into a Stipulation to approve the merger. (Docs. 34-5). In fact, Kit Carson supported the Stipulation. *Id.* at 18. The Stipulation included, among other things, a procedure for challenging Tri-State's rates which (1) required Tri-State to file advice notices of rate changes, and (2) provided member utilities, like Kit Carson, an opportunity to file protests which could lead to a hearing and result in reasonable rates. (Doc. 34-3) at 6-7.

In 2000, the PRC approved the Stipulation and merger on the condition that Tri-State would be subject to the PRC's jurisdiction "to the extent provided by law." (Doc. 35-1) at ¶ 10. The PRC also found that it was in the public's interest to approve the Stipulation and merger. *See* (Doc. 34-1) at ¶¶ 5 and 6. The New Mexico state legislature subsequently codified the Stipulation's protest procedures at NMSA 1978, § 62-6-4(D) (2000) ("If three or more New Mexico member utilities file protests and the commission determines there is just cause in at least three of the protests for reviewing the proposed rates, the commission shall suspend the rates, conduct a hearing concerning reasonableness of the proposed rates and establish reasonable rates."). Kit Carson, now a New Mexico Tri-State Member System, has consistently availed itself of the protest procedure to challenge Tri-State's wholesale rates. (Doc. 34) at 7.

Tri-State currently consists of forty-four Member Systems in four states, including New Mexico. (Doc. 63) at ¶ 2. New Mexico has twelve Tri-State Member Systems. *Id.* at ¶ 12. Tri-

State has entered into All Requirements Contracts with its Member Systems in which the Member Systems agree to "purchase and receive from Tri-State (with nominal exceptions not relevant here) all the electric power and energy the Member System requires to operate its electric system." *Id.* at ¶ 34. The Member Systems sell the electricity provided by Tri-State, at retail, to the people or businesses within each Member System. *Id.* at ¶ 11. The forty-four Member Systems provide retail electricity to more than 1.5 million people. *Id.* at ¶ 2.

A forty-four member democratically elected Board of Directors governs Tri-State's wholesale rates and other business. *Id.* at ¶ 12. The Board of Directors consists of one director elected by each Member System. *Id.* The wholesale rates adopted by the Board of Directors are single rates which means that "regardless of the size, location, and structure of a Member System, each Member System is charged the same wholesale rate for the capacity and energy delivered to its system." *Id.* at ¶ 39.

   2. *Factual Allegations Leading to this Lawsuit*

In 2012, Tri-State's Board of Directors voted on and approved a 4.9% rate increase using a new rate design for calendar year 2013. *Id.* at ¶ 40. Tri-State later filed Advice Notice No. 15 to inform the PRC of the wholesale rate increase for 2013. *Id.* at ¶ 42. Kit Carson and two other New Mexico Member Systems filed protests with the PRC objecting to the 2013 wholesale rate increase. *Id.* at ¶ 49. On November 29, 2012, Tri-State filed a response to the protests based, in part, on the PRC's alleged lack of jurisdiction. *Id.* at ¶¶ 50-51. On December 20, 2012, the PRC rejected Tri-State's response and suspended the 2013 rate increase. *Id.* at ¶ 52.

Tri-State then filed this lawsuit on January 25, 2013. (Doc. 1). Tri-State also filed with the PRC three Advice Notices for an interim wholesale rate pending resolution of its federal lawsuit, the filing of another rate Advice Notice, or an order by the PRC. (Doc. 63) at ¶ 53. The

same three protesting Member Systems filed protests with the PRC objecting to the interim rate. *Id.* at ¶ 56. On March 13, 2013, the PRC opened a separate case for the interim rate dispute and denied Tri-State's request for an interim rate. *Id.*

Tri-State and a non-protesting New Mexico Member System subsequently filed motions to reconsider the denial of the interim rate. On May 8, 2013, the PRC denied the motions to reconsider. *Id*. Tri-State then appealed the PRC orders denying the interim rate to the New Mexico Supreme Court. *Id.* at ¶ 57. That appeal is apparently still pending. *Id.* Because the PRC was not likely to approve the 2013 wholesale rate before Tri-State's Board of Directors established the wholesale rate for 2014, Tri-State withdrew Advice Notice No. 15 on June 26, 2013. *Id.* at ¶ 58.

In September of 2013, Tri-State's Board of Directors voted on and approved a 2014 wholesale rate. *Id.* at ¶ 60. Tri-State then filed with the PRC Advice Notice No. 19 informing the PRC of the 2014 rate. *Id.* at ¶ 61. On October 23, 2013, the PRC consolidated the PRC cases on the 2013 and 2014 wholesale rates. *Id.* at ¶ 63. The previous protesting Member Systems plus a fourth New Mexico Member System filed protests with the PRC regarding Advice Notice No. 19. *Id*. at ¶ 61. Tri-State responded to the protests on November 4, 2013, again raising the issue of the PRC's jurisdiction. *Id.* at ¶ 62. The PRC subsequently rejected the response and suspended the 2014 rate in December 2013. *Id.* at ¶ 64. In response to those PRC decisions, Tri-State filed a motion to reconsider the suspension of the 2014 rate. *Id.* The PRC, however, denied the motion to reconsider and reinstated its suspension of the 2014 rate on January 29, 2014. *Id.* On February 14, 2014, Tri-State filed, in this case, a Verified Amended Complaint for Declaratory and Injunctive Relief (Amended Complaint) which added the factual allegations regarding the PRC's suspension of the 2014 wholesale rate. (Doc. 63).

*3. Tri-State's Amended Complaint*

Tri-State claims it is entitled to declaratory and injunctive relief under Section 1983 because Defendants' actions violate the Commerce Clause by (1) placing a burden on interstate commerce and extraterritorial regulation, and (2) discriminating against out-of-state electricity producers. *Id*. at ¶¶ 65-72. Tri-State requests that the Court enter an order declaring that:

> (a) the Commission lacks jurisdiction over Tri-State's rates and interstate wholesale contracts in New Mexico and any attempt by the Commission to exercise jurisdiction over, suspend and/or determine Tri-State's rates is unconstitutional under the United States Constitution; (b) the Commission's order suspending Tri-State's 2013 and 2014 wholesale rates and setting a rate hearing is unconstitutional under the United States Constitution; (c) the Commission may not take any action with respect to Tri-State's rates or contracts.

*Id*. at ¶ 78. Tri-State also seeks a permanent injunction which prohibits Defendants "from (a) asserting jurisdiction over Tri-State's rates, and (b) interfering with Tri-State's interstate wholesale contracts, and (c) suspending and/or determining Tri-State's wholesale rates." *Id.* at ¶ 88. Defendants' answer to the Amended Complaint is essentially the same as their answer to the original complaint. (Docs. 22 and 64).

B. Discussion

Kit Carson now moves to intervene in this lawsuit as a matter of right under Fed. R. Civ. P. 24(a)(2), or, in the alternative, for permissive intervention under Rule 24(b).[1] Tri-State opposes the Motion to Intervene.

*1. Intervention as a Matter of Right*

Rule 24(a)(2) states that upon a timely motion the Court must allow anyone to intervene if that person or entity

---

[1] Although Kit Carson filed its Motion to Intervene prior to Tri-State filing its Amended Complaint, the Motion to Intervene is equally pertinent to the Amended Complaint and Defendants' corresponding answer.

claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Here, Tri-State does not specifically contest that Kit Carson's Motion to Intervene is timely for both its request for intervention as a matter of right and its request, in the alternative, for permissive intervention.

The prospective intervenor has the burden of establishing the right to intervene. *See, e.g., S2 Automation LLC v. Micron Technology, Inc.*, 2012 WL 3656462 *11 (D.N.M.). In determining if the prospective intervenor has carried that burden, the Court keeps in mind that the Tenth Circuit "follows a somewhat liberal line in allowing intervention." *WildEarth Guardians v. United States Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009) (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (internal quotation marks omitted)). Because the chief concern in a motion to intervene is the practical effect of the action on the prospective intervenor, the Court is required to examine the specific facts and circumstances of the action. *Id.* That being the case, "a Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions." *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

The Rule 24(a)(2) requirement of an interest related to the subject of the action calls for considering whether an interest is "direct, substantial, and legally protectable.'" *Utah Ass'n of Counties*, 255 F.3d at 1251 (internal quotation marks omitted) (quoting *In re Kaiser Steel Corp.*, 998 F.2d 783, 791 (10th Cir. 1993)). The test for determining that requisite interest, however, "'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Id*. at 1251-52 (quoting *In re Kaiser Steel Corp.*, 998 F.2d at 841 (citations omitted)). In fact, "[t]he threshold for finding

the requisite legally protectable interest is not high." *American Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008).  Nevertheless, a prospective intervenor must have a particularized interest which falls within the issues raised in the action, such as a threat of economic harm.  *Id.*; *WildEarth Guardians*, 573 F.3d at 996.

   Kit Carson argues that it has a requisite interest in this action because (1) it is a party in the underlying PRC proceedings; (2) Kit Carson has a history of prior advocacy as demonstrated by Kit Carson's consistent past use of the PRC's protest procedure to challenge Tri-State's rates; and (3) resolution of the Commerce Clause questions will impact (a) Kit Carson's right to participate in PRC proceedings challenging Tri-State's rates, (b) Kit Carson's economic interest in reasonable wholesale rates from Tri-State, and (c) Kit Carson's interest in upholding the merger, Stipulation, and resulting contract with Tri-State to provide electricity.  To the extent Kit Carson's interest arises from its participation in PRC proceedings to challenge Tri-State's rates, "courts have come to differing conclusions regarding the sufficiency of a movant's claimed interest when it stems from participation in regulatory, administrative, or legislative proceedings related in some manner to the subject of the suit."  *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 2011 WL 2173785 *2 (D. Vt.) (citing *Patch,* 136 F.3d at 197 (declining to find participation in administrative proceeding was sufficient to create interest in litigation regarding that proceeding); *In re Sierra Club,* 945 F.2d 776, 779 (4th Cir.1991) (holding environmental group involved in administrative permitting proceedings had interest in lawsuit challenging regulation where environmental group did not seek to intervene as lobbyist or have speculative future interest)).  Nevertheless, Kit Carson's "persistent record of advocacy" to obtain reasonable rates from Tri-State could be a basis for finding that Kit Carson has the requisite interest in the subject of this action.  *See Coalition of Arizona/New Mexico Counties v. Department of Interior*,

100 F.3d 837, 841 (10th Cir. 1996) ("In sum, we hold that Dr. Silver's involvement with the Owl in the wild and his persistent record of advocacy for its protection amounts to a direct and substantial interest in the listing of the Owl for the purpose of intervention as of right, even though Dr. Silver has little economic interest in the Owl itself."). Tri-State, however, persuasively argues that Kit Carson's interests are generalized and not particularized because (1) its interest in participating in the PRC proceedings reviewing Tri-State's rates extends to all of the New Mexico Member Systems and their consumers, and (2) "it is pure conjecture to assume that any action the [PRC] might take would operate to the benefit of [Kit Carson]," i.e., would necessarily lower the wholesale rates. (Doc. 40) at 12. *See Patch*, 136 F.3d at 205-06 (no protectable interest in electric rate restructuring case where "would-be intervenors root their professed economic interest in an as yet unrealized expectancy of lower electric rates."). Without deciding whether Kit Carson has a requisite interest in this lawsuit, the Court will assume, for the sake of argument, that resolution of this lawsuit may impair Kit Carson's interest in this lawsuit. The Court will, therefore, proceed directly to the issue of whether Kit Carson has established that the PRC will not adequately represent Kit Carson's interest in the lawsuit. *See, e.g., Kane County, Utah v. United States*, 597 F.3d 1129, 1133 (10th Cir. 2010) (proceeding directly to inadequate representation inquiry under Rule 24(a)(2)).

The prospective intervenor's burden to satisfy the inadequate representation element under Rule 24(a)(2) is, likewise, minimal and requires only "'the *possibility* of inadequate representation.'" *WildEarth Guardians*, 573 F.3d at 996 (quoting *Utah Ass'n of Counties*, 255 F.3d at 1254 (emphasis added)). Adequate representation, however, "does not mean exactly the same representation." *Herrera*, 257 F.R.D. at 255-56 (citing *Sanguine Ltd. v. United States Dept. of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984)). With respect to government

representation of interests, the Tenth Circuit has clearly held that it is generally "impossible for a government agency to protect both the public's interests and the would-be intervenor's private interests." *New Mexico Off-Highway Vehicle Alliance v. United States Forest Service*, 540 Fed. Appx. 877, 880 (10th Cir. 2013). Nonetheless, if the government's interests are identical to the prospective intervenor's interest and there is no indication that the government's position or policy could shift, then the prospective intervenor has failed to meet the inadequate representation element. *See id.* at 881 n. 7. On the other hand, representation by the government may be inadequate if, for example, the prospective intervenor has special expertise not available to the government. *Utahns for Better Transportation v. United States Dept. of Transportation*, 295 F.3d 1111, 1117 (10th Cir. 2002). Additionally, the government's silence on its intent to defend a prospective intervenor's particular interest is a factor in deciding whether representation is inadequate. *Id*.

Kit Carson argues first that because of the ongoing nature of the underlying PRC proceedings, the PRC is not in a position to argue how the yet-to-be-determined Tri-State rates would not violate the Commerce Clause under the *Pike* balancing test. A litigant employs the *Pike* balancing test when the law which purportedly violates the Commerce Clause does not discriminate against interstate commerce. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1040 (10th Cir. 2009) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)). "That test states that '[the law] will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Id*. (quoting *Pike*, 397 U.S. at 142). To conduct this balancing test, the court must have evidence with which to "understand[] the magnitude of both burdens and benefits." *Id*. at 1043.

Kit Carson's argument based on the *Pike* balancing test is unconvincing. Applying the *Pike* balancing test to this case, the Court will examine the affect of the PRC's authority over Tri-State's rates on interstate commerce and local interests. The specific outcome of the underlying PRC proceedings, i.e., the establishment of a particular rate, is not relevant to the broader issue of how the PRC's exercise of authority over Tri-State's rates affects interstate commerce and local interests. The fact that the PRC has yet to decide on a reasonable rate, therefore, does not support a conclusion that the PRC cannot adequately represent Kit Carson's interest in this litigation, which is to ensure that the PRC maintains its authority over Tri-State's rates.

Next, Kit Carson argues that the PRC will not adequately protect its interest in upholding the Stipulation supporting the Tri-State and Plains merger. Kit Carson explains that if the Court determines that the PRC lacks jurisdiction over Tri-State, the Court will, by implication, invalidate the Stipulation. According to Kit Carson, if the Stipulation is unconstitutional then the validity of the merger between Tri-State and Plains is at stake as well as the Tri-State contract Kit Carson has for the wholesale purchase of electricity. Kit Carson argues that the PRC does not have an interest in adequately protecting Kit Carson's potential loss of its wholesale supplier of electricity because the PRC's interest lies with only "preserving its regulatory authority over Tri-State's rates." (Doc. 41) at 13.

However, since the merger and Stipulation established the PRC's regulatory authority over Tri-State's rates, it logically follows that the PRC will necessarily defend the merger and Stipulation. Moreover, the PRC's defense of the merger and Stipulation will implicitly incorporate a defense of Kit Carson's interest in continuing to obtain wholesale electricity from Tri-State. The PRC's findings in favor of Kit Carson in the underlying proceedings also

10

demonstrate that the PRC, like Kit Carson, share the same interest in having the PRC preserve its regulatory authority over Tri-State.  In fact, in suspending the 2013 rate, the PRC found that Tri-State agreed during the merger proceedings to be subject to the PRC's jurisdiction.  (Doc. 40-1) at 16.  Additionally, when the PRC defends its regulatory authority over Tri-State's wholesale rates to New Mexico Member Systems, such as Kit Carson, the PRC fulfills its interest in protecting the public from unreasonable retail rates.

      The Court further notes that, except for a general failure to state a claim defense, Kit Carson's proposed answer reflects the same affirmative defenses raised by the PRC in its answer to the Amended Complaint.  (Doc. 33-1) at 11; (Doc. 64) at 9.  Kit Carson does not persuade the Court that there would be some reason that the PRC would not raise the failure to state a claim defense.  *See Kane*, 597 F.3d at 1135 ("government 'ha[s] displayed no reluctance [in these proceedings], at least so far as the record before us shows'" to represent the prospective intervenor's interest, and prospective intervenor "'has provided no basis to predict that the [government] will fail to present … an argument on the merits that [the prospective intervenor] would make.'") (citation omitted).  In fact, the PRC states in its answer to the Amended Complaint that it "reserves the right to add any additional affirmative defenses that may arise over the course of this litigation."  (Doc. 64) at 9.  As this Court has previously recognized, "[c]ompetent counsel, such as those representing the potential intervenors, can usually think up something the [sic] would do different from another attorney." *Herrera*, 257 F.R.D. at 256.  A difference in trial strategy between the PRC and Kit Carson, therefore, does not necessarily mean that the PRC's representation would be inadequate.  Finally, despite the PRC's silence on this Motion to Intervene, Kit Carson has not shown that it has some special expertise on the subject of the PRC's jurisdiction which the PRC itself does not possess or that the PRC could possibly

11

shift any of its policies or interests in a way that would be adverse to Kit Carson's interest in this case.

In sum, Kit Carson's interest in maintaining the PRC process established by the merger and Stipulation is identical to the PRC's interest in preserving its authority under the merger and Stipulation. Kit Carson has, therefore, not carried its minimal burden of showing that the PRC would not adequately represent Kit Carson's interest in this lawsuit. Consequently, Kit Carson is not entitled to intervene as a matter of right under Rule 24(a)(2).

2. *Permissive Intervention*

Under Rule 24(b), the Court can allow permissive intervention if the prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b) also states that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Unlike Rule 24(a)(2), Rule 24(b) does not require that a prospective intervenor "have a direct personal or pecuniary interest in the subject of the litigation." *San Juan County, Utah v. United States*, 503 F.3d 1163, 1207 (10th Cir. 2007). The Court may take into consideration the fact that a prospective intervenor does not "assert a separate or additional claim or defense." *Kane*, 597 F.3d at 1136. Moreover, "[w]hile not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention." *Herrera*, 257 F.R.D. at 249 (citing *City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)). The main consideration in determining whether a court will allow permissive intervention is trial convenience. *S2 Automation LLC*, 2012 WL 3656462 at *12.

It is clear from the above discussion that Kit Carson's affirmative defenses have questions of law or fact in common with the PRC's affirmative defenses. In fact, Kit Carson's affirmative defenses are the same as the PRC's affirmative defenses except for a general failure to state a claim defense. Considering the PRC's open-ended answer to the Amended Complaint, it is possible that the PRC will raise that defense as well. Because the affirmative defenses are essentially the same, the Court does not fear that a permissive intervention would necessarily raise superfluous issues.

Although undue delay is unlikely because of the early stage of this litigation, Tri-State argues that allowing Kit Carson to intervene presents trial convenience and manageability concerns. Tri-State argues that "if the Court allows [Kit Carson] to intervene, it would be signaling that all wholesale and retail rate payers affected by Tri-State's rates and service and anybody that could be granted intervention status in the [PRC] rate proceedings (which only adds to the already long list of individuals and entities) would be able to intervene." (Doc. 40) at 20). Tri-State further notes that "to the extent that [Kit Carson] believes that its participation in the merger case or the Stipulation supports permissive intervention, there were at least 15 other supporters of the Stipulation" which may wish to intervene in this case. *Id. See, e.g., Herrera*, 257 F.R.D. at 259-60 (denying permissive intervention, in part, because, to be fair, the Court "may need to let others similarly situated" to intervene and "[a]t some point, the Court must cut off the evidence to make the best decision it can."). Kit Carson, however, argues convincingly that only three other rural electric cooperative have protested Tri-State's rates and only Kit Carson has sought to intervene. Nonetheless, as Tri-State asserts, if the Court allows Kit Carson to intervene, the parties would be burdened by discovery propounded by Kit Carson which

would be virtually identical to that propounded by the PRC.  Furthermore, the Court notes that is has concluded, *supra*, that the PRC will adequately represent Kit Carson's interest.

On the whole, Kit Carson has not shown that permissive intervention would contribute to the just resolution of this lawsuit nor has Kit Carson convinced the Court that allowing it to intervene would not prejudice Tri-State by adversely affecting the efficient litigation of this lawsuit.  The Court will, therefore, deny Kit Carson's request for permissive intervention as well.

IT IS ORDERED that Kit Carson Electric Cooperative, Inc.'s Motion to Intervene (Doc. 33) is denied.

_____
UNITED STATES DISTRICT JUDGE